UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LINCOLN-SUDBURY REGIONAL SCHOOL
DISTRICT,

            Plaintiff,

        v.

MR. AND MRS. W,

            Defendants.


WALLIS AND MR. AND MRS. W.,

            Plaintiffs-in-Counterclaim

        v.

LINCOLN-SUDBURY REGIONAL SCHOOL
DISTRICT AND BUREAU OF SPECIAL
EDUCATION APPEALS,

            Defendants-in-Counterclaim.

CIVIL ACTION
NO. 16-10724-FDS

## STATE DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION OF WALLIS AND MR. AND MRS. W. TO SUPPLEMENT THE RECORD

State defendant-in-counterclaim, Massachusetts Bureau of Special Education Appeals

("BSEA"), respectfully submits this memorandum of law in opposition to the motion of

plaintiffs-in-counterclaim Wallis and her parents, Mr. and Mrs. W. ("the Wallis plaintiffs"), to

supplement the record of administrative proceedings at the BSEA by submitting additional

evidence in this forum.  The BSEA does not oppose a limited portion of the motion, which seeks

to supplement the record with several documents that were submitted to the BSEA but

inadvertently omitted from the Administrative Record filed by the BSEA in this case; and the

BSEA will file a short Supplemental Administrative Record containing several documents, as

detailed below.

However, BSEA opposes the remainder of the Wallis plaintiffs' motion, which seeks

supplementation of the record to add 11 documents (Exhibits A-K) that the parents could have

presented, but failed to offer, at the BSEA hearing, as well as 23 other documents (Exhibits P-1

to P-23) that the parents submitted as attachments to their closing argument at the BSEA but that

the Hearing Officer properly excluded from evidence.  The Court should deny the motion to

supplement the record as to those documents (Exhibits A-K and Exhibits P-1 to P-23).[1]

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs-in-counterclaim Mr. and Mrs. W. filed a request for a hearing at the BSEA in

September 2014, claiming that their daughter, Wallis, a sophomore at Lincoln-Sudbury Regional

High School, was disabled as a result of a concussion that she had sustained during a field

hockey practice.  *See* Administrative Record ("A.R.") II:1361-86 (BSEA Decision).[2]  They

further claimed that Lincoln-Sudbury had failed to provide Wallis with a free appropriate public

---

[1] The motion to supplement also identifies five documents that, although included in the
Administrative Record ("A.R."), were not listed (or were incorrectly identified) in the Table of
Contents to the Administrative Record.  *See* Docket Entry No. 31-2 at 5 (identifying documents
set forth at the following pages as having been omitted from, or misidentified in, the Table of
Contents:  A.R. I:602; A.R. II:732, 943, and 948; and A.R. III:1559).  The parents also note that
three exhibits that they submitted at the hearing, and which were admitted into evidence, were
not identified as parents' exhibits in the Table of Contents.  *See* Docket Entry No. 31-2 at 6
(identifying exhibits P-1, P-2, and P-3, admitted into evidence, and appearing at A.R. III:1764,
1768, and 1785, respectively).  Although errors in the Table of Contents do not provide a basis
for "supplementation" of the record, the BSEA will file a corrected Table of Contents, in order to
avoid confusion and to assist the Court in reviewing the Administrative Record.

[2] The Administrative Record, filed by the BSEA in conjunction with its Answer, is comprised of
four pleadings volumes, cited here as "A.R." followed by volume and page number, as well as
six transcript volumes, cited as "Tr." followed by volume and page number.

education, as required by the Individuals With Disabilities Education Act, 28 U.S.C. § 1400 et seq. ("IDEA"), and had violated her rights under Section 504 of the Rehabilitation Act. *Id.* at 1363-64. Mr. and Mrs. W. sought to recover the cost of their unilateral placement of Wallis at Lawrence Academy, a private school, where she had enrolled in the fall of 2013, after withdrawing from Lincoln-Sudbury High School. *Id.*

The parents represented themselves during the BSEA proceedings, while Lincoln-Sudbury was represented by counsel. *Id.* at 983, 1362. The Hearing Officer found that during the course of proceedings, the parents engaged in "dilatory tactics." *Id.* at 983. Specifically, the evidentiary hearing at the BSEA, originally scheduled to begin in late October 2014, was postponed twice at the parents' request, over the strenuous objections of Lincoln-Sudbury, and ultimately scheduled to begin on April 7, 2015. *Id.* at 1364-65; *see also id.* at 733 (Lincoln-Sudbury letter outlining parents' repeated delays).[3] In addition, the parents failed to comply with BSEA rules requiring parties to submit exhibit lists at least five business days prior to the scheduled hearing, prompting Hearing Officer Rosa Figueroa to state (in a scheduling order issued on April 3, 2015) that the "Parents' exhibits have not yet been received and may be vulnerable to exclusion." A.R. II:967.[4] The parents submitted a witness list, although they did

---

[3] *See* A.R. II:1364-65 (BSEA Decision, outlining procedural history, and reflecting that the hearing, originally scheduled for October 14, 2014, was postponed by agreement of the parties, and then scheduled for three days in February 2015; that the parents requested, and the BSEA granted, postponement of the February hearing dates, re-scheduling the hearing to April 7, 8, and 9, 2015; that the parents requested postponement of all of the April dates, and the BSEA partially granted that request, postponing the April 9 hearing date in light of Mr. W.'s unavailability due to a medical appointment but denying postponement of the April 7 and 8 hearing dates).

[4] In late March 2015, the parents had filed a motion seeking the recusal of Hearing Officer Figueroa, and, in her scheduling order on April 3, 2015, Hearing Officer Figueroa denied that motion but recommended administrative reassignment of the matter. A.R. II:767, 965-67, 1364. The BSEA's Director then reassigned the matter to Hearing Officer Byrne, who presided at the hearing and issued the BSEA's decision in this matter. *Id.* at 980, 1361-86.

so less than five business days before the April 7 hearing date. *Id.* at 741-43, 1365.

On the morning of April 7, 2015, the first day of the hearing, the parents submitted yet another request to postpone the hearing, seeking postponement until "June or July or August," and informing the BSEA that they would not attend the hearing on that day, notwithstanding that a witness subpoenaed by the parents (Lincoln-Sudbury's athletic director, Nancy O'Neil) was present and ready to testify, as was Lincoln-Sudbury's Special Education Director, Aida Ramos, another witness on the parents' witness list. *Id.* at 1365; *see also* Tr. I:3-5 (statement by Hearing Officer Lindsay Byrne on April 7, 2015, describing postponement request that BSEA received that morning); Supp. A.R. at 32.[5] Hearing Officer Byrne attempted to reach Mrs. W. by telephone in order to "offer her the opportunity to participate by telephone," but was unable to reach the parent at two phone numbers and left a phone message. A.R. II:1365; Tr. I:3-4.

Hearing Officer Byrne proceeded to deny the parents' request for postponement. A.R. II:983. She noted that, in seeking postponement again, the parents, "perhaps hoping for [a] different result" with Hearing Officer Byrne, had "merely repeated" arguments that Hearing Officer Figueroa had already denied; that the parents had already subpoenaed witnesses to appear on April 7, who were in fact then present before her; that the issues "involve[d] actions occurring two to three years ago"; that the parties had had "ample time to prepare for Hearing"; and that there was "no new information being developed." *Id.* at 982-83; Tr. I:8-9.

Hearing Officer Byrne went on to consider Lincoln-Sudbury's request that the matter be dismissed based on the parents' failure to appear. She noted that, as a matter of both state regulation and BSEA rules, the BSEA was authorized to dismiss a matter based on a party's

---

[5] The request for postponement and letter, while dated April 6, 2015, were received by the BSEA on April 7, 2015 at 7:46 a.m. *See* Tr. I:4-5 (Hearing Officer Byrne's statement at the hearing on April 7, 2015).

failure to attend a hearing or fail to conform with the rules. A.R. II:983 (citing 801 Code Mass. Regs. § 1.01(g); 603 Code Mass. Regs. § 28.08(5)(c); and BSEA Rules VVII and X(B)). Hearing Officer Byrne nevertheless declined to dismiss the matter. Tr. I:13-18.

However, emphasizing that "the Parent has clearly ignored prior clear rulings," Hearing Officer Byrne reasoned that some sanction was appropriate. A.R. II:983; Tr. I:14-17. She emphasized that "[t]his is not a case where the Parent is disadvantaged" by limited English skills, limited information, or disability; on the contrary, "the voluminous submissions" reflected that the parents had "demonstrated familiarity with the governing states, regulations and rules" and had "mounted a vigorous and consistent advocacy of their original position," leading her to conclude that "their [the parents'] absence from the scheduled Hearing was deliberate defiance of the BSEA Order denying, in part, their postponement request, with the intention of forcing the BSEA to reschedule on their terms." A.R. II:983; Tr. I:15 ("the Parent's not showing up was a deliberate defiance of the Hearing Officer's order. The fact she knew about it is evidenced by her submission of a witness list but not the exhibits that were expected.").

In light of the parents' "dilatory tactics," and in consideration of the BSEA's interest in "efficient case management" and the interest of all parties in a speedy resolution of the case, Hearing Officer Byrne determined that, as a consequence of having failed to submit their proposed exhibits on time, the parents had "forfeited the opportunity to submit documentary exhibits in this hearing." Tr. I:17; A.R. II:983 (because Lincoln-Sudbury had submitted its exhibits in a timely manner, but the parents had not, the documentary record would be closed, and "No late submissions will be accepted."). Hearing Officer Byrne further noted that, in light of the written submissions already previously made by the parents, including attachments to their multiple motions, along with all of the exhibits proposed by Lincoln-Sudbury, it would be

surprising "if there were anything that was not already in evidence that would be relevant to the determination on the issues in this matter." Tr. I:17-18. In this regard, Lincoln-Sudbury had submitted some 45 exhibits, including Wallis's student health record; medical reports from her doctor to the school; a hospital record; communications between the parents and the school concerning Wallis's return to school and accommodations to be provided to her; communications between school staff concerning Wallis; and various school records relating to Wallis, including her transcript. *See* A.R. III:1390-1761 (Lincoln-Sudbury exhibits list and exhibits S-1 to S-45). The BSEA reconvened the hearing (with the parents actually appearing) on three days in November 2015 and two days in January 2016. A.R. II:1362. The parents presented testimony of 17 witnesses, all of whom were current or former school officials. *See* Tr. II-VI. Notwithstanding Hearing Officer Byrne's earlier order precluding the parents from submitting documentary evidence, *see* A.R. II:983, the Hearing Officer admitted into evidence four exhibits that the parents submitted at the hearing. *See* A.R. II:1365; A.R. III:1764-87.[6] The evidentiary record closed on January 22, 2016. A.R. II:1136, 1365. The parents and Lincoln-Sudbury each submitted closing arguments. A.R. II:1139, 1173.

After the conclusion of the hearing, the BSEA issued a decision rejecting Mr. and Mrs. W.'s claims in their entirety.[7] Hearing Officer Byrne found that "[t]he lack of support for the Parents' claims is as startlingly clear now as it was when they were first raised" and that "the Parents' vitriolic hyperbole does little to disguise the absence of factual and legal support for their position." *Id.* at 1383. As Hearing Officer Byrne explained, the parents' claim that Wallis

---

[6] Lincoln-Sudbury, whose counsel had cross-examined the witnesses called by the parents, informed the BSEA that it did not intend to call any additional witnesses, and that it would rest its case based on the documentary evidence that it had presented and the testimony of the witnesses cross-examined during the Parents' case. A.R. II:1133, 1365.

[7] The BSEA's decision is set forth at A.R. II:1361-86.

was eligible for special education services "is patently frivolous, as is the [related] claim to Section 504 protections [*i.e.*, section 504 of the Rehabilitation Act]." *Id.* Hearing Officer Byrne further found that the parents' filing of claims at the BSEA was "a bad faith effort" to "punish" Lincoln-Sudbury in response to the school's recommendation of a lower-level math placement for Wallis during the 2013-2014 school year "and to justify public funding for her private school education" at Lawrence Academy. *Id.* Hearing Officer Byrne concluded that "[i]f ever a matter merited a finding that it was brought for an improper purpose it is this." *Id.*

Following issuance of the BSEA decision, Lincoln-Sudbury filed this action, seeking to recover attorneys' fees from Mr. and Mrs. W. pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(III), which authorizes an award of attorneys' fees to a "prevailing . . . local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action  was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *See Complaint*, Docket Entry No. 1.

The Wallis plaintiffs filed an answer to the complaint, together with a counterclaim against Lincoln-Sudbury and the BSEA, seeking judicial review of the BSEA decision. *See Amended Answer and Counterclaim*, Docket Entry No. 11. The BSEA filed a certified copy of the record of administrative proceedings in conjunction with its answer to the Wallis plaintiffs' counterclaim. *See* Docket Nos. 24, 27. On December 30, 2016, the Wallis plaintiffs filed the present motion seeking to supplement the record. *See* Docket Entry No. 31.

## ARGUMENT

## I.     THE WALLIS PLAINTIFFS DO NOT ESTABLISH ANY BASIS FOR SUPPLEMENTATION OF THE RECORD.

In an action brought under IDEA, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii)

basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  The First Circuit has construed the "additional evidence" in subsection (ii) as referring to evidence that is "supplemental" to the evidence presented at the administrative agency; thus, the provision is *not* intended to allow witnesses merely to "repeat or embellish their prior administrative hearing testimony."  *Town of Burlington v. Department of Educ. for Comm. of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985).  Instead, "[t]he reasons for supplementation . . . might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."  736 F.2d at 790.

The First Circuit has further emphasized that "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."  *Roland M. v. Concord School Committee*, 910 F.2d 983, 996 (1st Cir. 1990), *cert. denied*, 499 U.S. 912 (1991).  In determining whether to allow additional evidence, a district court thus "should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for [judicial] trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources."  *Burlington*, 736 F.2d at 791.

As detailed in Argument IA below, the Wallis plaintiffs identify two documents that were submitted to the BSEA but inadvertently omitted from the Administrative Record filed by the BSEA with the Court, and the BSEA does not oppose supplementation of the record to include those two documents.  In all other respects, the Wallis plaintiffs do not meet the First Circuit's standards for admission of additional evidence, and the Court accordingly should deny the

remainder of their motion.

**A.    The BSEA Will File a Supplemental Administrative Record to Include Documents that Were Submitted to the BSEA but Inadvertently Omitted from the Administrative Record Filed with the Court.**

In support of their motion, the Wallis plaintiffs present a table identifying four documents that they contend were submitted to the BSEA but are missing from the Administrative Record that the BSEA filed with the Court:

- Parents' Response to Lincoln-Sudbury's Opposition/Reply to Parents' Motion to Oppose Lincoln-Sudbury's Motion to Dismiss/For Summary Decision, dated January 12, 2015 ("Parents' Response Memorandum");

- Letter sent by Mrs. W. to Hearing Officer Figueroa, dated February 22, 2015, requesting subpoenas for proposed witnesses;

- Letter and Request for Postponement sent by Mrs. W. to Hearing Officer Byrne, by facsimile, dated April 6, 2015; and

- Progress Report for Quarter 1 (2012) for Intensive Math.

*See* Docket No. 31-2, at 5 (table listing documents allegedly missing from record).

The BSEA has located the first ("Parents' Response Memorandum") and third (letter and accompanying Request for Postponement) documents identified above, and the BSEA accordingly will submit those documents to the Court in a Supplemental Administrative Record to be filed in paper form.[8]

The BSEA has not located the second document identified above (a letter from Mrs. W. to Hearing Officer Figueroa dated February 22, 2015, requesting issuance of subpoenas) and so opposes the parents' motion for supplementation of the record to include that document.[9]

---

[8] The Supplemental Administrative Record to be filed by the BSEA will also include one additional document that the Wallis plaintiffs did *not* identify, but which the BSEA discovered had been inadvertently omitted from the Administrative Record:  a witness list submitted by Lincoln-Sudbury.  A.R. II:1365; Supp. A.R. 41.

[9] Even if the Wallis plaintiffs were able to establish that they had submitted the letter dated

The BSEA also has not located the fourth document identified by the Wallis plaintiffs (Wallis's Quarter 1 Progress Report in math) and thus similarly opposes their motion to submit that document as additional evidence, while further noting that, even if Mr. and Mrs. W. had submitted the document, they purportedly did so as part of Exhibit P-18, one of the documents that the Hearing Officer properly excluded from evidence, as discussed in Argument IC below.

**B.      Exhibits A through K Merely Consist of Documents that the Parents Could Have Submitted, but Did Not Submit, at the BSEA Hearing.**

The next category of documents that the Wallis plaintiffs seek to submit as additional evidence – Exhibits A through K – consists entirely of information available to the parents at the time of the BSEA hearing. Although the parents had ample opportunity to submit such information (in the form of exhibits or testimony) at the multi-day BSEA hearing, which stretched from April 2015 to late January 2016, they failed to do so. *See* A.R. II:1365. In seeking to submit Exhibits A through K here, the Wallis plaintiffs do not point to *any* of the reasons for additional evidence identified by the First Circuit in *Burlington* – or, indeed, any persuasive rationale at all – to belatedly submit this material. Rather, they merely seek a "second chance" to submit yet more evidence in an already over-papered case. The Court should not

_____

February 22, 2015, to the BSEA, the omission of that subpoena-related letter would at most constitute harmless error, since the Wallis plaintiffs have not suggested that the absence of the letter from the record had any effect on their ability to call any of the proposed witnesses identified in the letter. Indeed, of the 11 persons identified in the letter, all but one (Bella Wong) testified at the BSEA hearing. *Compare* Docket Entry 31-5 (parents' letter dated February 22, 2015, requesting subpoenas for 11 persons) *with* Tr. II-VI. And the Administrative Record elsewhere contains requests by the parents for the issuance of a subpoena to Ms. Wong, who became Lincoln-Sudbury's Superintendent after the relevant events during the 2012-2013 school year, *see* A.R. I:591, 593, 595-96, as well as Lincoln-Sudbury's objection to issuance of a subpoena to Ms. Wong, *see* A.R. I:634-35, thus establishing that the BSEA was aware of the parents' request that Ms. Wong testify. However, the Hearing Officer sustained Lincoln-Sudbury's objection to issuance of a subpoena to Ms. Wong, finding that her testimony "is not likely to be relevant" since she lacked knowledge of Wallis in the relevant time. A.R. I:636.

allow supplementation of the record under these circumstances, as the provision allowing the presentation of additional evidence is not intended to enable parents to "scramble[] to use the federal court proceeding to patch up holes in their administrative case." *See Springer v. Fairfax County School Board*, 134 F.3d 659, 667 (4th Cir. 1998) (adopting First Circuit's standards).

In particular, four of the exhibits consist of e-mails during the 2012-2013 school year between Lincoln-Sudbury staff members concerning efforts to help Wallis make up missed school assignments (Exhibit E) and emails between the parents and school staff concerning Wallis's progress in school and the parents' request for her student records (Exhibits F, G, and H). *See* Docket Entry No. 31-3 at 77-90 (Exhibits E, F, G, H). Three other exhibits are transcripts of audio recordings of meetings that occurred in May and June 2013 between the parents and Lincoln-Sudbury staff concerning Wallis's academic progress and her math placement (Exhibits I and J) and a transcript of an audio recording of a meeting in June 2013 between Wallis and school staff concerning her upcoming math tests (Exhibit K). *See* Docket No. 31-3 at 91-320 (Exhibits I, J, K).[10]

All of the above exhibits thus contain material that existed at the time of the BSEA hearing and that the parents – had they complied with the applicable BSEA rules and the hearing officer's scheduling orders – could have submitted as evidence at the BSEA hearing. In particular, as Hearing Officer Byrne found, the parents failed to submit proposed documentary evidence within the timeframes established by 20 U.S.C. § 1415(f)(2), 34 Code Fed. Regs. § 300.512, and BSEA Rule IX, which require submission of proposed documentary evidence at

---

[10] The transcripts of these meetings were prepared on December 29, 2016, the day before the Wallis plaintiffs submitted their motion for supplemental evidence, but all of the meetings occurred in May or June 2013, well before the closing of evidence in the BSEA hearing, on January 22, 2016. *See* Docket No. 31-3 at 92, 208, 290; A.R. II:1365.

least five business days prior to the hearing date.  A.R. II: 1365; Tr. I:17.  The parents' non-compliance with the deadline for submission of their proposed exhibits does not provide a basis for the belated admission of Exhibits E-K here, particularly in light of the fact that the parents' failure to submit their exhibits on time was not an isolated delay.  *See* A.R. II:1364-65 (BSEA Decision, discussing parents' multiple requests for postponements); *see also* A.R. I:624; A.R. II:965-67.

The remaining four exhibits are affidavits, which – although prepared in November or December 2016, just before submission of the Wallis plaintiffs' motion – likewise concern events prior to completion of the BSEA hearing in January 2016, and the parents could have presented this information at the time of the BSEA hearing (by affidavit or testimony).  In particular, these four exhibits consist of an affidavit by Michael Beasley (a doctor who treated Wallis in July 2013), describing generally the effect of concussions (Exhibit A); an affidavit by Krista Collins, the head of the math department at Lawrence Academy, concerning Wallis's math placement and performance during the 2013-2014 and 2014-2015 school years (Exhibit B); a 31-page affidavit by Wallis, describing the injury that she sustained during a field hockey practice in September 2012, her school performance during the 2012-2013 school year, and her decision to enroll at Lawrence Academy in fall 2013 (Exhibit C); and another 31-page affidavit by Mrs. W., describing the parents' reasons for seeking relief at the BSEA, their concern that Lincoln-Sudbury had not properly responded to Wallis's educational needs, the parents' decision to enroll Wallis at Lawrence Academy, and her performance there (Exhibit D).  *See* Docket No. 31-3 at 1-76 (Exhibits A, B, C, D).[11]

---

[11] Two sentences in Mrs. W's affidavit concern Wallis's academic performance at George Washington University at an unidentified time, apparently at some point during the school year beginning in September 2015.  *See* Docket No. 31-3 at 72.  Even assuming for the sake of

The parents could have presented the information contained in each of those affidavits at the hearing.  Indeed, *all* of the above affiants – Dr. Beasley, Krista Collins, Wallis, and Mrs. W. – were on the witness list that the parents submitted on April 3, 2015, and thus they could have provided testimony about the same information later presented in the affidavits.  A.R. II:741-43, 1365.  But the parents deliberately chose not to call any of these four affiants as witnesses, apparently for strategic reasons; as stated in the memorandum in support of their motion for additional evidence, "the parents decided against offering their testimony or that of Wallis and their experts," "believing it to be a lost cause."  *See* Docket No. 31-1 at 15.  The Court should not allow them to submit affidavits belatedly as "additional evidence" in these circumstances.  *See Roland*, 910 F.2d at 996-97 (district court did not abuse its discretion in precluding testimony of parents' expert witnesses where they had refused to present the testimony at the BSEA, based on their "distrust of the BSEA proceedings"; "the parents were given every opportunity to present the desired testimony at the administrative level" but refused to do so, and "[t]o allow litigants to

---

argument that those sentences relate to events that occurred *after* the close of evidence in the BSEA hearing in January 2016, the motion does not suggest, much less establish, that such information was relevant in any way to the issues presented at the BSEA, namely, whether Wallis's concussion rendered her eligible for special education services under IDEA and whether the parents were entitled to reimbursement for their unilateral placement of Wallis at Lawrence Academy in the fall of 2013, over two years *before* the BSEA hearing ended.  While admission of additional evidence might be warranted in a given case where the additional evidence "concern[s] *relevant* events occurring subsequent to the administrative hearing," *Burlington*, 736 F.2d at 790 (emphasis added), information concerning Wallis's progress at George Washington University is *not relevant* to any issues properly addressed at the BSEA, where the parents were only seeking retroactive relief "limited to the student's junior and senior years at Lawrence Academy," and "there's no ongoing request for anything that would affect Lincoln-Sudbury's future obligations."  Tr. I:7-8 (statement by Hearing Officer Byrne, explaining issues presented). *Contrast Justin G. ex. Rel. Gene R. v. Board of Educ. of Montgomery County*, 148 F.Supp.2d 576, 585 (D.Md. 2001) (allowing submission of additional evidence concerning student's progress at private placement, where the placement occurred *after* the agency hearing *and* where the student's progress was relevant to an issue presented at the agency, namely, whether the proposed private placement would meet the student's educational needs).

husband their witnesses, arbitrarily withholding them from the administrative process, would effectively sabotage the statutory scheme.").

In short, all of the relevant information contained in the above exhibits existed at the time of the BSEA hearing, and the motion does not set forth any reason for the parents' failure to submit those exhibits at that hearing, other than their own "procedural mistakes," which do *not* provide a basis for admission of additional evidence.[12]  *See Springer*, 134 F.3d at 667. The Court accordingly should not allow the admission of these exhibits here.  Particularly where the Hearing Officer has determined that the parents' claim of special education eligibility for Wallis is "patently frivolous," the Court should heed the First Circuit's warning in *Roland*:  "We refuse to reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial *de novo*. Where parties could have, but purposely chose not to, call certain witnesses at the administrative hearing, the district court has discretion to exclude the testimony on judicial review."  *Id.* at 997.

C.    **The Hearing Officer Properly Excluded Exhibits P-1 to P-23 as Evidence at the BSEA Hearing, Because the Parents Attempted to Submit Them After the Evidence Had Closed, and Those Exhibits in Any Event Were Not Relevant to the Issues Presented.**

The Wallis plaintiffs also seek to submit, as additional evidence, 19 of the 23 exhibits (Exhibits P-1 through P-23) that they filed at the BSEA as attachments to their closing arguments, *after* the hearing itself had ended and the evidentiary record had already closed, and that the Hearing Officer therefore properly excluded from evidence.  *See* A.R. II:1333-34 (BSEA Order dated March 16, 2016).  In refusing to allow any of the 23 exhibits into evidence, Hearing

---

[12] The Wallis plaintiffs concede that it was their "procedural mistakes" at the BSEA hearing, *see* Docket No. 31-1 at 13, that resulted in Hearing Officer Byrne's order precluding parents from submitting documentary evidence following their failure to appear at the hearing on April 7, 2015.  A.R. II:983.

Officer Byrne explained that the evidentiary record at the BSEA had closed (on January 22, 2016); that the function of closing arguments was to present arguments based on "evidence in the hearing record"; and that "[t]he documents accepted into evidence, and the oral testimony elicited during the Hearing, constitute the record available for closing argument." A.R. II:1333. As Hearing Officer Byrne further explained: "[o]nly that record, seen, heard and observed by all parties simultaneously may be considered by the Hearing Officer," and "[n]o additional information may be offered in a closing argument either by attaching documents not previously admitted into evidence . . . or by offering new information in any other form." *Id.* Under these circumstances, the Hearing Officer acted well within her discretion in excluding the 23 exhibits as evidence, and the Court should deny the Wallis plaintiffs' motion to submit a subset of those exhibits as "additional evidence" here.

The Wallis plaintiffs argue that the Court should allow the admission of 19 of the exhibits, because some of them relate to a claim that – in the Wallis plaintiffs' view – the BSEA Hearing Officer improperly excluded from consideration at the hearing, namely, parents' claim seeking compensation for Lincoln-Sudbury's alleged violation of a regulation issued by the Massachusetts Department of Public Health governing school policies relating to concussions. *See* Docket No. 31-1 at 4-13. The regulation in question requires school districts to adopt policies setting forth procedures to be followed when students suffer head injuries and concussions during extra-curricular athletic activities. *See* 105 Code Mass. Regs. §§ 201.006 (copy attached in Addendum); *see also* Mass. Gen. Laws c. 111, § 222 (directing public health department's division of violence and injury prevention to develop an interscholastic athletic head injury safety training program in which all public schools shall participate, and directing the division to adopt implementing regulations). Several of the 19 exhibits related to the parents'

claim that Lincoln-Sudbury violated the foregoing regulation.[13]

But the BSEA Hearing Officer properly excluded consideration of the parents' claim that Lincoln-Sudbury violated the foregoing regulation, and thus there is no basis for the Court to admit, as "additional evidence," the exhibits relating to that claim. *See* A.R. I:527 (BSEA Order dismissing "Issue 11," which raised the question "Whether Parents are entitled to compensation for alleged transgressions by school personnel under 105 CMR 201.00 concerning head injuries and concussions in Extracurricular Athletic Activities"). As the Hearing Officer properly found, the question of whether Lincoln-Sudbury complied with that regulation was not encompassed within the issues that the BSEA is authorized to resolve, namely, issues concerning (1) students' eligibility for special education and related services under federal and state law and (2) whether schools have provided those services. *See* A.R. I:526 (BSEA Order, explaining that, under Massachusetts law, the BSEA is authorized to resolve disputes between parents and school districts concerning "(i) any matter relating to the identification, evaluation, education program or educational placement of a child with a disability or the provision of a free and appropriate public education to the child arising under this chapter [Mass. Gen. Laws c. 91B] and regulations promulgated hereunder or under the Individuals with Disabilities Education Act, 20 U.S.C. section 1400 et seq., and its regulations; or (ii) a student's rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. section 794, and its regulations") (citing Mass. Gen. Laws.

---

[13] In particular, the exhibits included a copy of the regulation (Exhibit P-1), *see* A.R. IV:1866-76; a letter from the Massachusetts Department of Education to the Superintendent of Lincoln-Sudbury in 2014, concerning the school's compliance with the regulation (Exhibit P-2), *see* A.R. IV:1877-78; guidance issued by the Massachusetts Department of Public Health in 2011 concerning students returning to academic work following head injuries (Exhibit P-9), *see* A.R. IV:2016-18; a Lincoln-Sudbury "Head Injury Protocol" (Exhibit P-16), *see* A.R. IV:2056-64; and a publication by the Centers for Disease Control concerning treatment of concussions (Exhibit P-8), *see* A.R. IV:1975-2015.

c. 91B, § 2A(a)).

The question whether Lincoln-Sudbury's policies governing concussions complied with the public health regulation had no bearing on the issues properly presented to the BSEA, namely, whether Wallis was eligible for services under IDEA and/or section 504, or whether Lincoln-Sudbury provided her with such services.[14]  Evidence concerning Lincoln-Sudbury's compliance with the public health regulation was not relevant to those issues for the simple reason that there was no evidence that Wallis was "disabled" within the meaning of those statutes in the first instance.

Based on the evidence presented over six days of hearing, the Hearing Officer concluded that "the Parents have not proven by a preponderance of the evidence that Lincoln-Sudbury failed in any respect to meet its obligations under the IDEA," Mass. Gen. Laws c. 71B, or Section 504.  A.R. II:1383.  To begin with, the Hearing Officer found that the evidence did not establish that Wallis suffered from a "disability" as defined by the IDEA and its implementing regulations, because, although the parents contended that Wallis's concussion was "the beginning of her disability," the Hearing Officer found that "[t]here is . . . no evidence in the record" showing that Wallis displayed any of the symptoms or impairments in functioning associated with a disability as outlined in the regulations.  A.R. II:1374-75.  In particular, the record did not contain any evaluations from doctors, other clinicians, or school staff showing the existence of such symptoms or impairments; it did not contain any complaints by Wallis or her parents that she had such symptoms; and, "[o]n the contrary Wallis successfully maintained a

---

[14] In particular, compliance by Lincoln-Sudbury with the regulation would not demonstrate that the school district provided (or did not provide) Wallis with a free appropriate public education, and, conversely, a showing by parents that Lincoln-Sudbury had failed to comply with the regulation would not have established either that it failed to identify Wallis as a student with a disability or that it failed to provide her with appropriate special education services.

demanding academic, sports and extracurricular schedule throughout the school year." *Id.* at 1375. In addition, there was no evidence of any adverse effect on Wallis's educational performance, "the second element of a disability finding." *Id.* Rather, the record reflected that "Wallis' teachers uniformly reported that Wallis returned to school after her injury without difficulty" and that her academic, athletic, and extracurricular involvement "continued for the remainder of the school year at a significantly high level and rapid pace." *Id.* at 1376. For the same reason, the Hearing Officer concluded that Wallis did not meet the definition of "disabled" under Mass. Gen. Laws c. 71B and did not have a physical or mental "impairment" under Section 504. *Id.* at 1376-78.

The Hearing Officer further concluded that Lincoln-Sudbury met its obligations under IDEA, Section 504, and Mass. Gen. Laws c. 71B. *Id.* at 1380-83. In particular, Lincoln-Sudbury "acted reasonably and responsibly when it followed the physician's instructions concerning Wallis' re-entry to school" following her concussion; it monitored her re-entry; provided regular education supports and evaluated the effectiveness of those supports; met with the family to discuss Wallis's academic functioning; and advised them of the procedure to request formal evaluations for eligibility for special education services." *Id.* at 1381, 1383; *id.* at 1383 (Lincoln-Sudbury teachers "extended reasonable regular education supports to Wallis" after her return "and for as long as she needed them, and . . . those supports permitted Wallis to maintain a high level of achievement in rigorous honors level academic classes and in a demanding extracurricular schedule."). Given the evidence that "Wallis did not display any symptoms of a medical, physical or mental impairment" during the 2012-2013 school year that were observed by school staff, and the fact that neither Wallis nor her parents complained of any such impairment, the Hearing Officer concluded that "there was no reason to 'suspect' that

Wallis had a disability that was impeding her progress in regular education." *Id.* at 1380-81. Based on the evidence of the school's actions following Wallis's concussion and the evidence that Wallis did not display symptoms of a disability, the Hearing Officer further concluded that Lincoln-Sudbury had complied with the "child find" requirements of IDEA and Section 504 (requiring school districts to have procedures to identify children "suspected" of having a disability but who are not yet receiving special education services). *Id.* at 1380-81, 1383.

The Hearing Officer thus properly dismissed the parents' claim relating to the public health regulation, and, for that reason – as well as the fact that the parents submitted Exhibits P-1 to P-23 after the evidentiary record had closed – the hearing officer did not err in excluding any of those exhibits, including those that related to the regulation.[15]

The remainder of the 19 exhibits (within Exhibits P-1 to P-23) that the parents now seek to admit as additional evidence related to Wallis's academic performance or medical condition between 2012 and 2015 and contain information that was available prior to the close of the BSEA hearing and that the parents thus could have presented at the hearing. Specifically, these remaining exhibits consist of emails between Lincoln-Sudbury staff or between school staff and the parents relating to the 2012-2013 school year (Exhibits P-6, P-10, P-15, P-22, and P-23); documents concerning Wallis's academic performance at Lincoln-Sudbury and MCAS scores in 2012-2013 (Exhibits P-11, P-13, and parts of P-18 and P-19); documents concerning her

---

[15] Moreover, as Lincoln-Sudbury pointed out in seeking dismissal of the parents' claim concerning the regulation, the state statute pursuant to which the public health regulation was promulgated   provides that the regulation does *not* provide a basis for liability against a school district. *See* Mass. Gen. Laws c. 111, § 222(f), (h) ("[t]his section shall not create any liability for a course of legal action against a school district, its officers or employees."). That statutory provision provided a further basis for the Hearing Officer's dismissal of the parents' claim concerning the regulation and thus establishes an additional reason that the Hearing Officer properly excluded any exhibits related to that claim.

academic performance at Lawrence Academy during the 2013-2014 and 2014-2015 school years (parts of Exhibit P-18 and P-19); her grade in a summer class at Stanford University in 2014 (part of P-19); and local newspaper articles in 2010-2013 concerning school competitions in which Wallis participated, and honors that she received in middle school in 2010-2011 (part of P-19). *See* A.R. IV:1949-50, 2019-29, 2040-54, 2065-74, 2078-90, 2100-01.[16]  The parents have not provided any persuasive basis for their failure to present the above information at the time of the hearing, and the Court should deny their attempt to belatedly submit such information in the form of "additional evidence."

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Amy Spector
Amy Spector, BBO #557611
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts  02108
(617) 963-2076
amy.spector@state.ma.us

Dated:  January 27, 2017

---

[16] One portion of Exhibit P-19, reflecting Wallis's grades at George Washington University in the fall of 2015, appears to have been available at least as early as January 7, 2016, *see* A.R. IV:2102-03), prior to the close of the evidentiary record at the BSEA, but, in any event, Wallis's academic performance in college had no bearing on the issues that the BSEA properly resolved, namely, whether Wallis was eligible for special education services during 2012-2013, when she was a student at Lincoln-Sudbury High School.

## CERTIFICATE OF SERVICE

I hereby certify that the above Memorandum, filed electronically through the Court's electronic case filing system on January 27, 2017, will be sent electronically to all parties registered on the Court's electronic filing system, and paper copies of the motion will be sent by first class mail, postage pre-paid, to non-registered parties.

/s/ Amy Spector
Amy Spector