## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINCOLN-SUDBURY REGIONAL SCHOOL DISTRICT, <br><br> Plaintiff, <br> v. <br><br> MR. AND MRS. W, <br><br> Defendants <br> WALLLIS and <br> MR. and MRS. W., <br><br> Plaintiffs-in-Counterclaim <br> v. <br><br> LINCOLN-SUDBURY REGIONAL SCHOOL DISTRICT and <br><br> BUREAU OF SPECIAL EDUCATION APPEALS, <br> Defendants-in-Counterclaim. | Civil Action <br> No.  1:16-CV-10724-FDS |

### LINCOLN-SUDBURY REGIONAL SCHOOL DISTRICT'S
### REPLY TO MR. AND MRS. W.'S
### OPPOSITION TO LINCOLN-SUDBURY'S MOTION FOR ATTORNEYS' FEES

Lincoln-Sudbury Regional School District ("Lincoln-Sudbury" or "District") files this reply to Mr. and Mrs. Wallis' Opposition to the Motion for Attorneys' Fees and continues to move for an award of attorneys' fees and costs against Mr. and Mrs. W.  Specifically, Lincoln-Sudbury seeks the amount of $200, 412.50 through March 25, 2018 in attorneys' fees, plus related costs and expenses in the amount of $5,167.61, through February 28, 2018.  This updated total reflects additional deductions based on Mr. and Mrs. Ws' Opposition.  See Exhibit 1, Affidavit of Counsel, ¶ 5.  Alternatively, assuming *arguendo* that this Honorable Court believes

that interrelated matters for the state court action are not recoverable, then Lincoln-Sudbury

seeks $198,207.50 in fees through March 25, 2018 and expenses in the amount of $5,167.61,

through February 28, 2018. Id. at ¶ 7.[1]

I.    **The District's Motion for Attorneys' Fees did not contain block billing and/or imprecise billing.**

"Block billing" is an industry term used to describe "the time-keeping method by which

an attorney lumps together the total daily time spent working on a case, rather than itemizing the

time expended on specific tasks." E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 354–55 (D.

Mass. 2013). "When confronted with block billing, courts will apply a global reduction to the

lodestar hours, and this reduction is applied after the specific deductions." In re Volkswagen &

Audi Warranty Extension Litig., 89 F. Supp. 3d 155, 176 (D. Mass. 2015) (quotation omitted).

"Courts will not, however, impose a global penalty where block-billing is infrequent or relatively

minor, or where most of the entries were reasonably recorded." Id.

For example, in Ciolino v. Eastman, No. CV 13-13300-ADB, 2016 WL 6246757, at *3

(D. Mass. Oct. 25, 2016), the court refused to generally issue a discount for block entries because

the large majority of entries were not block billed. It explained "[t]hat is not to say that counsel's

recordkeeping practices were ideal, but where only three or four entries on trial days are block

---

1 The District notes that it reviewed Exhibits 1 to 4, attached to counsel for the Ws' affidavit. See Dkt. 86-1, 86-2, 86-3, 86-4. It notes that counsel for the Ws' rounded many entries up, which in aggregate, increased the totals. For example, in the first entry on Exhibit 1, it states that the amount is $563, but the actual amount is $562.50. Dkt. 86-1. The following entries in Exhibit 1 are rounded up: 11/13/14, 2/23/15, 10/29/15, 1/6/16, 2/22/16, 4/28/16, and 3/16/17. Dkt. 86-1. In Exhibit 2, the following entries are rounded up: 3/6/17, 3/17/17, 4/28/17, 5/9/17, and 5/10/17. Dkt. 86-2. In Exhibit 3, the following entries are rounded up: 3/9/17, 3/22/17, and 5/30/17. Dkt. 86-3. In Exhibit 4, the following entries are rounded up: 10/1/14, 10/2/14, 10/6/14, 10/15/14, 10/16/14. 10/22/14, 11/12/14, 11/25/14, 12/1/14, 12/9/14, 12/10/14, 2/4/15, 2/5/15, 2/6/15, 2/18/15, 2/19/15, 2/20/15, 2/24/15, 3/4/15, 3/6/15, 3/11/15, 3/25/15, 1/1/16, 1/19/17, 1/20/17, 1/23/17, 1/25/17, 1/27/14 (sic), 1/30/17, 2/22/17, 2/25/17, 5/27/17, 5/29/17, 6/1/17, 6/2/17, 6/8/17, 6/21/17, 6/25/17, 7/1/17, 7/2/17, 7/7/17, 7/13/17, 7/14/17 and 8/1/17. Dkt. 86-4. Finally, in two entries, counsel listed a higher rate. In Exhibit 3, on March 9, 2017, counsel for the Ws' listed the rate as $226 and in Exhibit 4 on November 25, 2014, he listed the rate again as $226. Dkt. 86-3; 86-4. The rate was $225 an hour. Additionally, the entry for 2/24/15 is not an accurate description of the work conducted on 2/24/15. See Dkt. 86-4; 84-2.

billed, and those entries contain a good amount of detail, the Court will allow counsel to collect their full fee."

In another example, in Neponset Landing Corp. v. Nw. Mut. Life Ins. Co., No. CV 10-11963-JGD, 2013 WL 12321426, at *3 (D. Mass. July 24, 2013), the court refused to discount the attorneys' fees due to block billing, because the losing party, Neponset, did "not contend that the work that was done was not related to the litigation. Nor is Neponset claiming that NM spent too much time on any given task. Therefore, there is no need to further detail the amount of time spent on each individual task as it will not further this court's analysis." The court added that "a review of the invoices establishes that they are clear, well-organized, and provide sufficiently detailed explanations of all the tasks done so that Neponset and this court can ascertain whether the work was compensable under the parties' agreement." Id. (quotation and brackets omitted). It finally added that block billing "is not unreasonable if the attorneys maintain contemporaneous records and provide sufficiently detailed explanations of those bills." Id. (quotation omitted); see also Ascion, LLC v. Ruoey Lung Enter. Corp., No. CIV.A. 09-10293-GAO, 2014 WL 972138, *2 (D. Mass. Mar. 13, 2014) ("I find unpersuasive Ruoey Lung's objection to the use of block-billing. While there are some billing entries that could have included more detail, I am satisfied that the entries were contemporaneously compiled and accurately reflect the number of hours each attorney and paralegal spent working on the case." (quotation and brackets omitted)); RFF Family P'ship, LP v. Link Dev., LLC, 962 F. Supp. 2d 340, 343 (D. Mass. 2013), order clarified, No. CIV. 11-10968-NMG, 2013 WL 3990776 (D. Mass. Aug. 2, 2013) ("Although defendant challenges plaintiff counsel's practice of 'block billing,' whereby attorneys itemize several tasks within a single time entry rather than maintaining separate time entries for each task performed,

that method of billing is not unreasonable if the attorneys maintain contemporaneous records and provide sufficiently detailed explanations of those bills.").

Here, Mr. and Mrs. W. state that 375.8 hours were block billing. See Dkt. 85 at 4. The District spent a little over 982 hours in this litigation until March 25, 2018. Dkt. 84-2; 84-4. Therefore, even assuming *arguendo* that all the entries that Mr. and Mrs. W. list as block entries, were actually block entries, a fact which the District does not concede, then close to two-thirds of the entries were still reasonably recorded.

Furthermore, the invoices provided are contemporaneous records. They were clear, well-organized, and provide sufficiently detailed examples of all tasks. Many of the entries that Mr. and Mrs. W. list as block-billing are instances where smaller tasks could reasonably be subsumed within a larger overarching task and sufficient detail is provided of both the larger and smaller tasks.

For example, the following entries are a singular larger entry – appearing at a hearing, with broken down pieces: "To LS for hearing; reading transcript; Emails and telephone conference with Attorney Dowling…" and "To LS for hearing; Email communications with Attorney Dowling concerning hearing status; Email communications with client…; Continue reviewing transcript in prep for closing arguments." Dkt. 86-1, p. 3.

In another example, many of the entries that Mr. and Mrs. W. list as a block-billing, the District broke down in one entry the larger activity of writing a motion or pleading or preparing for a hearing into smaller tasks. See Dkt. 86-1, p. 4 ("Search for BSEA decision concerning Wallis' brother; Email communications with client to confirm decision relates to Wallis' brother; Investigate W. representation pre-BSEA case…; Search DMS for examples of Ws vitriole."); Dkt. 86-2, p. 1 ("Leave voicemail for accounting…Work on affidavit in support of motion…for

attorneys' fees and record references."); Dkt. 86-2, p. 1 ("Call Joyce and leave message; Telephone conference with Joyce concerning affidavit for prevailing rates; Email paralegal concerning joint motion to extend time..; Emails with Spector concerning supplemental record…; Email reminder to Sankey concerning his affidavit...; Search DMS for examples of Ws vitriole."); Dkt. 86-2, p.1 ("Draft Sowyrda affidavit in support of…fees; Emails with MES concerning affidavit…and contact information for Joyce; Review enotice from court granting motion for extension of time to file motion for summary judgment; Telephone conferences and emails with MES concerning her affidavit...for attorneys; fees; Revise/supplement draft motion for fees with list of affidavits...; Review/revise Sankey affidavit; Review Sankey's draft affidavit in support of...fees and email him concerning including applicable fees rates; Review e-notice from court granting extension of time for filing motion."); Dkt. 86-2, p.3 ("Review research of 1st Circuit and Saylor's…cases; Draft items for concise statement of material facts and affidavit of counsel."); Dkt. 86-2, p.3 ("Update Sowyrda affidavit and note to her; Evaluate all billing documents for missing data; Search DMS for missing statements; Email paralegal...about missing documents…; Total fees and costs related to BSEA, USDC case, and document requests and complaints against nurses and athletic trainer; Create Exhibit A to affidavit to summarize costs and fees incurred; Update affidavit; Begin supplemental memo in support of motion...for fees with record sites."); Dkt. 86-2, p. 3 ("Revising memo in support of motion for summary judgment; Revise affidavit of counsel; Draft motion for summary judgment concerning fees; Finish drafting concise statement of material facts and supplement record citations."); Dkt. 86-2, p.4 ("Emailed Sankey and Joyce about updated affidavits; Edited Joyce affidavit; Reviewed memo and motion of law for updating; Email Ehrens on finalizing motion and memo; Updated Sankey's affidavit."); Dkt. 86-3, p.2 ("Conference with accounting concerning billing; Work on

facts/affidavit; Conference with paralegal concerning bills, redacting, noting previous billing reductions; Work on facts with record citations."); Dkt. 86-3, p. 2 ("Conference with accounting concerning past billing…; Work on memo in support of summary judgment and concise statement of material facts."); Dkt. 86-3, p.2 ("Conferences with paralegal and accounting concerning updated billing information 2/25-4/30; Review billing documents, note redactions and corrections for paralegal and instructions for calculations; Review additional caselaw and assess for inclusion in memo of law in support of motion...for fees.").

The District should not be penalized for providing in detail the breakdown of the larger task of writing the motions or pleadings, instead of just writing "draft motion."  See Bristol-Navarro v. Puerto Rico Dep't of Educ., 215 F. Supp. 3d 195, 200 (D.P.R. 2016) ("The fact that Plaintiffs' counsel may have provided additional details or broken down the individual components of a particular task—specifying that they conducted legal research on the doctrines of muteness and ripeness, for instance—does not mean that these entries have been billed in a block format.").  Therefore, the entries are appropriate as they are contemporaneous records that are clear, well-organized and provide sufficiently detailed examples of all tasks.  There should be no reduction in hours.

II.   **Assuming *arguendo* that the District's motion contained block billing, a fact which the District does not concede, the proper remedy is a five to fifteen percent discount.**

Even assuming *arguendo* that this Honorable Court believes that Lincoln-Sudbury's entries were block billing and warrant a global reduction, Mr. and Mrs. Ws' request for a forty percent reduction, is excessive. Dkt. 85, p. 13.  Where the use of block-billing is prevalent, courts have imposed global fee reductions of five to twenty percent.  Hermida v. Archstone, 950 F. Supp. 2d 298, 312 (D. Mass. 2013) (awarding fifteen percent reduction due to block billing);

see also Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 339 (1st Cir. 2008) (awarding global

fifteen percent reduction for entries that were unclear); Ellicott v. Am. Capital Energy, Inc., No.

CV 14-12152-FDS, 2017 WL 1224537, at *2 (D. Mass. Apr. 3, 2017) (discounting number of

hours by five percent due to block billing); Ciolino v. Eastman, No. CV 13-13300-ADB, 2016

WL 6246757, at *3 (D. Mass. Oct. 25, 2016) (awarding ten percent reduction due to block

billing); Perry v. Roy, No. CV 10-10769-FDS, 2016 WL 1948823, at *6 (D. Mass. May 3,

2016), appeal dismissed (Sept. 14, 2016) (applying across-the-board discount of five percent to

attorney hours requested and will leave paralegal hours unchanged).

Given that Mr. and Mrs. W. concede that the vast majority, close to two-thirds, of the

time entries, is not block-billing and given that Lincoln-Sudbury has already included

professional courtesy discounts in discounting the amount that it is seeking, the proper reduction,

to the extent that this Honorable Court believes a reduction is appropriate, is five to fifteen

percent.

**III.     The District's time was necessary and productive work.**

Although Mr. and Mrs. W. dispute that the number of hours spent by counsel for Lincoln-

Sudbury on this case was reasonable, they present only evidence that their attorney spent 147.6

hours less on this case in the District Court.   They fail to offer any evidence or identify any

authority to support that the number of hours opposing counsel spends is the adequate

benchmark for what hours are necessary or productive.  There may be many reasons for

discrepancies between the hours that two parties spend on litigation.  For example, Mr. and Mrs.

W. may have decided for financial reasons to limit the hours that their counsel spent in preparing

for the District Court.  Alternatively, counsel for Mr. and Mrs. W. may be more efficient than the

average attorney.[2]  The strategic choices that one party makes do not mean that the other parties'

hours are unreasonable.  Given the success that Lincoln-Sudbury had on all issues, the number of

hours spent is indicative of necessary and productive work.

Moreover, the parties are not on equal footing.  The extent of work required to prepare

the fee request, including obtaining supporting affidavits from attorneys outside counsel's firm

and the process of compiling billing information, redacting, and removing unrelated entries,

explains the difference in the time spent.  Except for two entries, Mr. and Mrs. W. provide no

evidence on why they believe that the time listed for individual events is excessive or

unproductive.  See Dkt. 85; Exhibit 1, ¶ 4.  As outlined in the attached affidavit, the District

agrees to discount those hours.  Id.  The District reviewed the bills and discounted hours through

professional courtesy discounts already, where it believed that its time was unnecessary or

unproductive.  See Dkt. 84-2; 84-4.

Finally, this case was a relatively novel one as there are only a few cases across the

country where the parents brought a frivolous complaint in bad faith and for an improper

purpose, and a school district has received attorneys' fees directly from the parents.  Given that

the case raised novel issues, it required more preparation than a traditional case.  Therefore, the

hours spent on the litigation are reasonable, necessary, and productive.

IV.     **The hours spent on this matter were for this matter.**

In Exhibit 1 to Mr. and Mrs. Ws' counsel's affidavit, he lists the hours that he believes

were billed for unrelated matters.  See Dkt. 86-1.  First, it is unclear why he believes that the first

entry for 2.5 hours, which relates to a motion to dismiss and discovery, is unrelated to this

---

2 Counsel for Mr. and Mrs. W. does not provide any documentation to support the number of hours that he states to have worked on this case and also states that he did not include all of the hours that he worked in his totals.  See Dkt. 86.  It is thus hard to comment on the amount of time that he spent on the litigation.

matter.  See Dkt. 86-1, p. 2.  This entry relates to discovery in the case and responding to pertinent motions.

Second, several of the entries listed, the District has already removed from its total hours. The District agreed to remove two hours from the 12/19/14 entry for reviewing the Open Meeting Law complaint and checking with the Attorney General, the 1/5/15 entry, the 3/18/15 entry   See Dkt. 86-1; Dkt. 84-2; Dkt. 84-3, ¶ 7.  The District already discounted 3.8 hours for these deductions, but notes that it should be 3.9 hours.  Dkt. 84-2; Dkt. 84-3, ¶ 7.  The additional .1 will be discounted, as described below.  Therefore, the District has already eliminated 3.8 of the hours that Mr. and Mrs. W. are counting as part of its 74.3 hours on unrelated matters.

Third, the District agrees that some of the time is for unrelated matters and this Honorable Court should exclude them.  The 1/29/15 entry includes matters related to preparing for the hearing and for the unrelated Open Meeting Law matter.  Dkt. 86-1, p.2.  Thus, there should be a .6 hour reduction.  See Exhibit 1, ¶ 4.  The 5/13/16 entry relates in part to communication with a different case, so there should be a .1 reduction.  Id.  Therefore, in combination with the .1 additional hours already agreed to, this Honorable Court should eliminate .8 hours, not 74.3 hours.

Finally, Lincoln-Sudbury disagrees with Mr. and Mrs. W's contention that the other entries are for unrelated matters.  The 2/2/15 entry is about reviewing a school committee letter to the parents and the newspaper.  Given that the parties were in active litigation and statements made to the parents or the public could be used in the proceedings, counsel for Lincoln-Sudbury had to review this correspondence.  The 2/3/15, 2/23/15, and 2/26/15 entries relate to preparing for the administrative hearing, engaging in discovery, investigating the parents, as well as ensuring that documents and correspondence being publicly released, were consistent with the

strategy and interests of Lincoln-Sudbury. Dkt. 86-1, p.2.   The 2/27/15 and 3/2/15 entries relate

to concussion policies and protocols, which were elements of Mr. and Mrs. Ws' allegations at the

Bureau of Special Education Appeals and in the District Court. Dkt. 86-1, p. 3.   Consequently,

they were relevant to the proceedings.   The 3/5/15 entry read in its entirety indicates that

"Review communications related to open meeting law/public records requests in light of hearing

officer's¼ clarification order."  Dkt. 84-2.   Hence, the work related to the proceedings at the

Bureau of Special Education Appeals, not other litigation.   The 3/16/17 entry relates to research

on Mr. and Mrs. W., which was used and relevant to the District Court filings, to show improper

purpose.  Dkt. 86-1, p. 4.

       The challenged entries remaining all reflect time spent communicating with counsel

representing Lincoln-Sudbury in the state court litigation arising out of the same facts and

circumstances as the Bureau of Special Education Appeals' ("BSEA") proceeding and reviewing

the state complaint.   The entries are 10/29/15, 11/25/15, 12/2/15, 1/6/16, 1/7/16, 2/22/16, 4/5/16,

4/28/16, 5/11/16, 8/16/16, 10/14/16, 11/17/16, 11/28/16, 12/13/16, 12/14/16 and 3/10/17.  Dkt.

86-1, p. 3-4. Lincoln-Sudbury should be able to recover fees incurred when its special education

attorneys communicated with the attorneys representing Lincoln-Sudbury in the Ws' state court

action seeking damages.   The state court action arose out of the same facts as the BSEA

proceeding, and the allegations in that complaint were virtually identical to the allegations in the

BSEA hearing request.  Lincoln-Sudbury's special education counsel was in contact with

insurance defense counsel to share factual information and analysis because she had already

interviewed teachers and staff and investigated the facts and circumstances, and to monitor the

status of and keep apprised of claims and arguments made in that case.  Special education

counsel would not have been involved in the state court action at all if it were not for the BSEA

proceeding arising out of the same facts and circumstances.  It is only because of the BSEA proceeding that counsel has spent any time on the state court case.

Time spent conferring with insurance defense counsel or reviewing motions filed in the state court case is unlike time spent addressing student records or public records issues or claims against the professional licenses of school nurses and athletic directors.  Special education counsel was involved in the records and licensing matters before the BSEA proceeding and would have been involved in them even if the BSEA proceeding had never been filed.  They were and are separate matters.  The time spent on the state court action, however, is directly related to the BSEA proceeding.  Special education would not have been involved in the state court action at all if not for the BSEA proceeding.

Despite the foregoing, if the Court determines that Lincoln-Sudbury cannot recover attorneys' fees for time spent which is related to the state court action, the Court should deduct only that portion of the time reported in the entry which is attributable to the state court action. From the 10/29/15 entry, only a small portion of the time reflected is related to review of the state court complaint and a deduction of 0.2 would be appropriate. From the 12/2/15 entry, although the vast majority of the entry is related to conferencing with Attorney Davis, review of the motion to dismiss is not, and a deduction of .9 would be appropriate. For the 1/16/16, 1/7/16, 2/22/16 and 4/28/16 entries, the parts related to emails with Attorney Dowling, represent only a small portion of the time spent and a deduction of 0.8 would be appropriate. From the 5/11/16 entry, although the majority of the time is emailing the insurance counsel, the returned waivers are relevant to this case, so a deduction of .5 is appropriate. The 11/25/16, 4/5/16, 8/16/16, 10/14/16, 11/17/16, 11/28/16, 12/13/16, 12/14/16 and 3/10/17 would be deleted in their entirety. Consequently, if the Court determines that Lincoln-Sudbury cannot recover attorneys' fees for

time spent which is related to the state court action, the Court would deduct a total of 9.8 hours.
See Exhibit 1.

In sum, Lincoln-Sudbury believes that only .8 hours are unrelated to this litigation and
should be deducted.   Nonetheless, if the Court determines that Lincoln-Sudbury cannot recover
attorneys' fees for time spent which is related to the state court action, the Court should deduct
10.6 hours, not the 74.3 hours Mr. and Mrs. W. seek.

**V.      It is not appropriate to apply the core and non-core distinction in this case.**

Mr. and Mrs. W attempt to argue that there should be a distinction between core and non-
core work, including preparing the attorneys' fee petition. Dkt. 85-1.   As this Honorable Court
stated in Showtime Entm't LLC v. Ammendolia, No. CV 10-40194-FDS, 2016 WL 1555685, at
*8–9 (D. Mass. Apr. 15, 2016), the First Circuit has allowed district courts the flexibility to
determine whether to employ a core versus non-core distinction, including for fees to prepare the
fee petition.   The First Circuit stated that "we traditionally have refrained from prescribing hard
and fast rules for fee awards in order to ensure that district courts are not left to drown in a rising
tide of fee-generated minutiae." Matalon v. Hynnes, 806 F.3d 627, 638-39 (1st Cir. 2015).   "The
bottom line is that there are a variety of ways in which a trial court can fashion the lodestar.
Distinguishing between core and non-core tasks is one of those ways. But we have never
imposed a rigid requirement that a district court employ a core/non-core analysis when
adjudicating a fee petition—and we decline to impose such a requirement today.   While the
core/non-core distinction may be a useful tool for fashioning a reasonable fee in some cases, the
choice of whether to employ that distinction is within the sound discretion of the district court.
As long as the court uses permissible techniques and explains what it has done, a reviewing
court's primary focus is on the reasonableness of the award." Id.; see also Marrotta v. Suffolk

Cty., 726 F. Supp. 2d 1, 5 (D. Mass. 2010) ("Although the First Circuit previously distinguished between the fee apportioned to core and non-core work, it no longer recognizes such a distinction. The lodestar calculation will yield a presumptively correct result and additional tinkering merely serves to double count some factors." (quotation and ellipses omitted)).

For example, in Ciolino v. Eastman, No. CV 13-13300-ADB, 2016 WL 6246757, at *3 (D. Mass. Oct. 25, 2016), the Court refused to employ the core/non-core distinction. The Court underscored that "Defendants have not explained why employing the distinction would be necessary in the circumstances of this case, aside from making broad assertions that Plaintiff's counsel billed at 'astronomical' rates and that refusing to employ the distinction would result in a 'windfall.'" Id. The court added that "[a]n examination of the entirety of Plaintiff's time records demonstrates that 'non-core' work such as writing letters and making phone calls did not occupy a large amount of counsel's time. Furthermore, the Court does not necessarily agree that this type of work, which often involves communicating with and/or advocating for a client, and frequently cannot be performed by a paralegal or junior attorney, should always be considered less worthy of compensation than activities defined as 'core' work." Id.; Showtime Entm't LLC v. Ammendolia, No. CV 10-40194-FDS, 2016 WL 1555685, at *9 (D. Mass. Apr. 15, 2016) (refusing to employ core and non-core distinction where attorneys spent very few billable hours, if any, in unproductive meetings or on non-substantive conference calls).

Similarly, here, Mr. and Mrs. W. have not explained why the distinction between core and non-core is necessary in this case. Even assuming *arguendo* that Mr. and Mrs. W. have accurately listed "non-core tasks," a fact which the District will not concede, when viewing the entire billing records, it is evident that those tasks did not occupy a large amount of the counsels' time. Compare Dkt. 84-2; 84-4 with Dkt. 86-1; 86-2; 86-3; 86-4. Additionally, reviewing emails

and emailing clients, opposing counsel, insurance counsel or Mr. and Mrs. W. could not be performed by a paralegal. Lincoln-Sudbury assigned work to a paralegal when it could, as evidence of the assistance that the paralegal provided in redacting and compiling bills. See Dkt. 86-3. Lincoln-Sudbury has already provided a significant amount of professional courtesy discounts, reducing the amount of attorneys' fees that it is seeking.

Hence, this court should not apply a core and non-core distinction in this case, as the lodestar method adequately addresses the recovery for attorneys' fees.

VI.   **The hourly rate is reasonable.**[3]

Mr. and Mrs. W. argue that the hourly rate charged is unreasonable because one school district, was found to have a lower rate and is at the lower end of the range in Attorney Joyce's affidavit. See Dkt. 85, p. 11. The IDEA permits the court to award attorney's fees that are "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C) (emphasis added). The fact that one school district pays a lower rate and is at the bottom of the scale for attorney's fees is irrelevant to what is the prevailing rate in the legal community and whether Lincoln-Sudbury's rates are reasonable.

There will always be school districts on the bottom and top of the scale. The question is what the average rate is. Lincoln-Sudbury provided affidavits from knowledgeable attorneys unconnected to the litigation that supports that its rates were reasonable for all attorneys involved in this litigation, from Attorney Sowyrda to Attorney Ehrens, to Attorney Vasudevan. Dkt. 84-2; 84-5; 84-6. Its rates were in the middle of the range. Id. It is also the rate that it charges its school district clients for Attorney Ehrens, Attorney Vasudevan and Attorney Sowyrdas' work. Id. Although Attorney Vasudevan has less experience than Attorney Ehrens and Attorney

---

3 There were some adjustments that needed to occur for travel time. See Exhibit 1, ¶ 4.

Sowyrda, clients are routinely charged the same rate for her work. See Exhibit 1, ¶ 2. Attorney

Vasudevan is an experienced attorney in the field, with her own client base. See Exhibit 1, ¶ 1;

Dkt. 83. Given that the prevailing rate for Attorney Vasudevan is $235 per hour, it is a

reasonable rate.

Consequently there should be no discounting of the hourly rate for Lincoln-Sudbury's

attorneys in this matter.

VII.    **The costs that Lincoln-Sudbury requests are reasonable.**

Finally, Lincoln-Sudbury is entitled to recover costs. A more detailed description of the

costs is provided in Exhibit 1. See Exhibit 1, ¶ 9. The costs that Lincoln-Sudbury is seeking –

legal research, postage, photocopying, parking, lodging, transportation and food -- are

recoverable and reasonable. See InvesSys, Inc. v. McGraw-Hill Companies, Ltd., 369 F.3d 16,

22–23 (1st Cir. 2004) (prevailing plaintiff can recover costs of computer-assisted research);

Quint v. A.E. Staley Mfg. Co., 245 F. Supp. 2d 162, 179 (D. Me.), aff'd, 84 F. App'x 101 (1st

Cir. 2003) ("Costs incurred for transportation, lodging, parking, food and telephone are both

reasonable and necessary."); Boadi v. Ctr. for Human Dev., Inc., No. 14-CV-30162-KAR, 2017

WL 5178791, at *6 (D. Mass. Nov. 8, 2017) ("Plaintiff is entitled to recover the costs of postage,

copies, and parking, which appear reasonable.").

<b><u>CONCLUSION</u></b>

Lincoln-Sudbury is entitled to recover its reasonable attorneys' fees and costs.

Specifically, Lincoln-Sudbury seeks the amount of $200, 412.50 through March 25, 2018 in

attorneys' fees, plus related costs and expenses in the amount of $5,167.61, through February 28,

2018. This total reflects a discount of additional deductions after the Opposition. See Exhibit 1,

Affidavit of Counsel, ¶ 5.  Alternatively, assuming *arguendo* that this Honorable Court believes that interrelated matters for the state court action are not recoverable, then Lincoln-Sudbury seeks $198,207.50 in fees through March 25, 2018.  Id. at ¶ 7.

DATED at Quincy, Massachusetts this 19th day of April, 2018.

> Lincoln-Sudbury Regional School District,
> By its attorneys,
>
>
> /s/ Felicia Vasudevan
> Felicia Vasudevan, Esq.
> BBO # 687463
> Doris R. MacKenzie Ehrens, Esq.
> BBO #544252
> 300 Crown Colony Drive, Suite 410
> Quincy, MA 02269-1923
> (617) 479-5000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of April, 2018, I served a copy of the foregoing electronically through the CM/ECF system on all counsel of record for the parties.

> /s/ Felicia Vasudevan
> Felicia Vasudevan

1066386v1