UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

_____
                                    )
**LINCOLN-SUDBURY REGIONAL**        )
**SCHOOL DISTRICT,**                )
                                    )    **Civil Action No.**
    **Plaintiff and**         )
    **Counterclaim-Defendant,** )   **16-10724-FDS**
                                    )
    v.                         )
                                    )
**MR. and MRS. W.,**                )
                                    )
    **Defendants and**         )
    **Counterclaim-Plaintiffs,** )
                                    )
and                                 )
                                    )
**WALLIS W.,**                      )
                                    )
    **Counterclaim-Plaintiff,** )
                                    )
    v.                         )
                                    )
**BUREAU OF SPECIAL EDUCATION**     )
**APPEALS,**                        )
                                    )
    **Counterclaim-Defendant.** )
_____ )

## ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

**SAYLOR, J.**

Plaintiff Lincoln-Sudbury Regional School District, as the prevailing party in this lawsuit, has moved for attorneys' fees and related costs. For the reasons stated below, the motion will be granted in part and denied in part.

**I.**     **Background**

Wallis W. was a minor child who attended Lincoln-Sudbury High School. On September

30, 2012, she was injured during a field-hockey practice and suffered a concussion. After seeing a doctor, she was instructed to stay home from school for about two weeks, and refrain from physical activity for another two weeks or so after that. The doctor's orders were communicated to the school, which complied with them in all respects. Various accommodations were made to help Wallis catch up on the work she missed.

However, Wallis struggled in her intensive mathematics class throughout the school year. In May 2013, eight months after the concussion, her math teacher recommended that she take an advanced, but less rigorous, course for the following year. Her parents, Mr. and Mrs. W., then claimed that Wallis was disabled and that the school had failed to provide reasonable accommodations, precipitating a lengthy dispute. In September 2013, Mr. and Mrs. W. removed Wallis from Lincoln-Sudbury and enrolled her at Lawrence Academy, a private school.

The parents brought a proceeding before the Board of Special Education Appeals ("BSEA"). The hearing officer issued a decision on April 1, 2016, finding that Wallis was not impaired during the 2012-2013 academic year and that she was not denied access to the school curriculum. The hearing officer also found that the parents' claim was "patently frivolous" and brought for an "improper purpose."

After the decision, the district initiated this action to recover its attorneys' fees and costs under 20 U.S.C. § 1415(i)(3)(B), and Mr. and Mrs. W. counterclaimed to reverse the hearing officer's decision. On January 25, 2018, this Court granted the district's motion for summary judgment, agreeing with the hearing officer's finding that the parents' claims were both frivolous and brought for an improper purpose, and finding that an award of reasonable fees was proper. The Court then directed the parties to file briefs and supporting affidavits and exhibits concerning the calculation of attorneys' fees and costs.

## II. **Legal Standard**

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary"). "[T]he court has a right—indeed, a duty—'to see whether counsel substantially exceeded the bounds of reasonable effort.'" *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (quoting *Pilkington v. Bevilacqua*¸ 632 F.2d 922, 925 (1st Cir. 1980)).

After determining the number of hours reasonably expended, a court's second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide

3

documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

### III. <u>Analysis</u>

Plaintiff seeks $200,412.50 in attorneys' fees, plus related costs and expenses of $5,167.61. In their opposition, defendants raise four principal objections to plaintiff's requests. They contend that (1) 74.3 hours for time expended on "unrelated" matters should be deducted; (2) a global reduction in hours by 40% is warranted because of excessive block billing and unproductive work; (3) plaintiff's attorneys' hourly rates were unreasonably high; and (4) costs should be limited to court filing fees. The Court will address each objection in turn.

#### A. <u>Alleged Unrelated Matters</u>

Defendants first request that the Court reduce attorneys' fees by 74.3 hours for "unrelated work." (Opp. at 13). Of those challenged 74.3 hours, defendants identified entries totaling 11.4 hours they contend are "directly attributable to unrelated matters" and block billing entries totaling 62.9 hours they contend contain "unrelated matters." (*Id.* at 8-9). Plaintiff has conceded

4

that 0.8 hours, attributable to time spent on reviewing an "Open Meeting Law" complaint and consulting with the Office of the Attorney General, should be deducted. (Reply at 9). The eliminated fees associated with that time have already been incorporated into plaintiff's $200,412.50 fee request.[1]

The parties dispute whether fees for related state-court matters are recoverable. Defendants had brought suit against plaintiff in state court concerning issues arising out of the same facts as the BSEA proceeding. Plaintiff was represented by different counsel in the state-court proceeding, and Attorney Ehrens, plaintiff's lead counsel in this suit, consulted with that counsel. (Def. Ex. 1). However, in its complaint, plaintiff stated that it was seeking fees and costs "to defend against Mr. and Mrs. W.'s claims in the administrative proceeding below . . . and the prosecution of [the federal court] action." (Compl. ¶ 37). Plaintiff did not state it was seeking to recover fees for state-court matters, even assuming (without deciding) that such fees would be recoverable here. Accordingly, the Court will deduct an appropriate amount of time.

Plaintiff's attorneys represent that only 9.8 hours are directly attributable to Attorney Ehrens's efforts in the state-court action. (Reply at 11-12).[2] The Court has reviewed the parties' briefs and supporting affidavits and finds that representation appears to be accurate. Accordingly, 9.8 hours will be deducted from the total number of hours for Attorney Ehrens.

---

[1] Plaintiff originally sought $202,791.50 in attorneys' fees. (Mem. in Supp. at 1).

[2] The 9.8 hours are allocated as follows: 0.2 hours for October 29, 2015 (review state-court complaint); 0.1 hours for November 25, 2015 (voice message for state-court counsel); 0.9 hours for December 2, 2015 (review a motion to dismiss); 0.8 hours for various entries in early 2016 (e-mails to state-court counsel); 0.5 hours for May 11, 2016 (discussion concerning waivers); 0.5 hours for April 5, 2016 (e-mails to state-court counsel); 4.6 hours for August 16, 2016 (travel to state court and conference with state-court counsel); 0.6 hours for October 14, 2016 (review state-court matters); 0.5 hours for November 17, 2016 (review e-mail and motion); 0.6 hours for November 28, 2016 (review motion and e-mail to state-court counsel); 0.3 hours for December 13, 2016 (e-mails to state-court counsel); 0.1 hours for December 14, 2016 (e-mail to client concerning state-court matters) and 0.1 hours for March 10, 2017 (e-mail to state-court counsel).

Defendants further request an additional reduction of 62.9 hours that were block billed, alleging that the listed activities included matters from both this litigation and the related state-court action. Rather than attempt to parse those entries, the Court will address the block-billing issue separately.

### B. Alleged Block Billing and Unproductive Work

Based on billing reports provided to plaintiff by its counsel, it appears that plaintiff requests compensation for 982.7 hours worked. The billing reports may be summed up as follows:

Period 1 (BSEA Hearing): September 26, 2014 to April 4, 2016
- Attorney Sowyrda—3.9 hours
- Attorney Ehrens—491.2 hours[3]
- Attorney Ehrens—13.5 hours of travel

Period 2 (Federal Litigation Phase 1): April 5, 2016 to April 30, 2017
- Attorney Sowyrda—2.4 hours
- Attorney Ehrens—201.2 hours
- Attorney Ehrens—1 hour of travel
- Paralegal—17.1 hours

Period 3 (Federal Litigation Phase 2): May 1, 2017 to March 25, 2018
- Attorney Sowyrda—0.2 hours
- Attorney Ehrens—229.6 hours
- Attorney Vasudevan—8.2 hours
- Paralegal—14.4 hours

Counsel then wrote off certain entries as "professional courtesy reductions." After accounting for these entries, the billing reports reflect the following:

Period 1 (BSEA Hearing): September 26, 2014 to April 4, 2016[4]
- Attorney Sowyrda—3.9 hours
- Attorney Ehrens—471.1 hours

---

[3] It appears that in the invoice for the period from September 26, 2014, to April 4, 2016, the time of various attorneys, including that of Attorney Vasudevan, were counted under the hours for Attorney Ehrens. However, the vast majority of the 491.2 hours were solely attributable to the work of Attorney Ehrens.

[4] Attorney Ehrens wrote off 5 hours at $225 per hour on the February 6, 2015 bill, 9 hours at $225 per hour on the April 13, 2015 bill, and 6.1 hours at $225 per hour on the April 28, 2015 bill.

- Attorney Ehrens—13.5 hours of travel

Period 2 (Federal Litigation Phase 1): April 5, 2016 to April 30, 2017[5]
- Attorney Sowyrda—2.4 hours
- Attorney Ehrens—194.2 hours
- Attorney Ehrens—1 hour of travel
- Paralegal—17.1 hours

Period 3 (Federal Litigation Phase 2): May 1, 2017 to March 25, 2018[6]
- Attorney Sowyrda—0.2 hours
- Attorney Ehrens—195.1 hours
- Attorney Vasudevan—4.4 hours
- Paralegal—14.4 hours

In aggregate, Attorney Sowyrda billed 6.5 hours; Attorney Ehrens billed 860.4 hours and 14.5 hours of travel; Attorney Vasudevan billed 4.4 hours; and a paralegal billed 31.5 hours. As discussed earlier, the Court will deduct 9.8 hours from Attorney Ehrens for her work on the related state-court matter, making her new total 850.6 hours (exclusive of travel).

Defendants request that this Court substantially reduce the fee award because of "excessive use of block billing." (Opp. at 3). "Block billing is an industry term used to describe the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (citation and internal quotation marks omitted). "When confronted with block billing, courts will apply a global reduction to the lodestar hours . . . after the specific deductions." *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015) (citation and internal quotation marks omitted). Defendants allege that plaintiff's counsel have block billed 375.8 hours. (Opp. at 4). However,

---

[5] Attorney Ehrens wrote off 7 hours at $225 per hour on the March 9, 2017 bill.

[6] Attorney Ehrens wrote off 7 hours at $225 per hour on the May 31, 2017 bill, 9 hours at $225 per hour on the June 30, 2017 bill, and 18.5 hours at $235 per hour on the July 31, 2017 bill. Attorney Vasudevan wrote off 3.8 hours at $235 per hour on the March 26, 2018 bill.

7

it appears that 1.3 hours defendants contend are block billed were in fact "single task hours." (Def. Ex. 4 at 10). Therefore, plaintiff's counsel have only block billed 374.5 hours, of which 373.7 hours were attributable to Attorney Ehrens and 0.8 hours were attributable to Attorney Vasudevan.

The Court agrees that plaintiff's attorneys periodically used block billing to record their time. For example, Attorney Ehrens billed 6.7 hours in a single entry on January 27, 2017, which stated:

> Finish revising and editing opposition to motion to supplement the record; e-file; e-mail communications with court clerk concerning same; review Assistant Attorney General Amy Spector's e-filing notices and e-mail communications with her concerning same.

Similarly, Attorney Ehrens billed 4.2 hours in a single entry on April 14, 2016, which stated:

> Finalize complaint for attorneys' fees and exhibit A; prepare civil action cover sheet, motion to file under seal, memorandum in support of motion to file under seal, and correspondence to USDC concerning filing; conference with paralegal concerning hand-filing all documents; e-mail client concerning same; e-mail paralegal concerning status and summons; research standard for fees and decisions and search for BSEA decisions and comments by hearing officers about parents.

The use of block billing somewhat hinders the Court's analysis of the reasonableness of the time spent on each task. Such a practice warrants a reduction in the number of compensable hours. *See Torres-Rivera*, 524 F.3d at 340 (finding no error in district court's application of a 15% global reduction of fee award as a sanction for block billing). In light of the attorneys' use of block billing, the Court will reduce the number of block billed hours for which compensation is requested by 5%. A greater reduction is not warranted because this plaintiff's counsel provided "sufficiently detailed explanations" of its bills and the significant majority of entries were not block billed. *See Ciolino v. Eastman*, 2016 WL 6246757, at *3 (D. Mass. Oct. 25,

2016) ("[A] global reduction of fees in this case would not be appropriate, since the large majority of entries are not block billed.").[7]

Next, defendants contend that plaintiff's attorneys billed an excessive number of hours for "unnecessary and unproductive work." (Opp. at 4). Excluding travel and paralegal work, plaintiff's attorneys billed 441.6 hours on this litigation;[8] by contrast, defendants' counsel represents that Mr. and Mrs. W. will be billed 339.7 hours for his work.[9] Plaintiff counters that the discrepancies in hours may be attributable to strategic choices defendants made in litigation, or that defense counsel is "more efficient than the average attorney." (Reply at 7-8). In addition, plaintiff concedes certain specific entries, totaling 8.6 hours, that defense counsel identified as excessive or unproductive.[10]

Two factors are particularly relevant to this analysis. First, Attorney Ehrens was intimately involved in the BSEA hearing and was presumably familiar with the facts and applicable law by the time the matter reached this Court, whereas defense counsel "came to this case as a complete novice in special education law and expended [significant] time becoming familiar with [relevant case law]." (Opp. at 6). Second, this case raised relatively novel and complex issues, and thus required more preparation than traditional cases, and plaintiff was the prevailing party on every issue. In light of these factors, and mindful of the First Circuit's

---

[7] Indeed, some of the entries defendants contend are block billed are subsumed within a larger overall task. For example, defendants allege that Attorney Ehrens's entry on June 5, 2017, for 8.2 hours is an example of block billing. The entry however shows that Attorney Ehrens's work that day was dedicated to working on plaintiff's motion for summary judgment and related issues.

[8] That figure does not account for plaintiff's professional courtesy discounts.

[9] Mr. and Mrs. W. proceeded *pro se* in the BSEA hearing. Therefore, the Court cannot compare hours spent by the parties in the BSEA proceeding.

[10] The entries were 4.2 hours on July 5, 2017, for work on "eliminating pages for summary judgment opposition" and 4.4 hours on July 6, 2017, for "revisions and cuts to limit memorandum to 20 pages." On May 22, 2017, the Court had already granted all parties permission to submit memoranda up to 30 pages.

9

caution that district courts are directed to "zealously guard against any propensity to over-staff litigation" in the context of a fee-shifting statute, the Court will apply a 5% reduction in the number of hours expended, with the exception of travel time. *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992) (citation omitted).

Finally, defendants request the Court reduce the number of hours billed for time spent on administrative tasks and travel. Courts often apply differential rates to fees for "'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders'" and "'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). Similarly, some courts consider travel time to be non-core work that is routinely discounted at half the rate of core legal work. *See, e.g., Chestnut v. Coyle*, 2004 WL 438788, at *3 (D. Mass. Mar. 9, 2004) (collecting cases reducing fee award for travel time); *Norkunas v. HPT Cambridge, LLC*, 969 F. Supp. 2d 184, 196 (D. Mass. 2013) ("Travel time is typically compensated to account for only half of the time actually spent traveling."). However, "[w]hile the core/non-core distinction may be a useful tool for fashioning a reasonable fee in some cases, the choice of whether to employ that distinction is within the sound discretion of the district court." *Matalon*, 806 F.3d at 639. There is no contention that the travel time was unnecessary or inefficient, simply that it should be reduced. Under the circumstances here, the Court finds that no further discount is appropriate.

Accordingly, the Court will reduce the number of hours for which compensation was requested by 10% for block billed hours and 5% for all other hours except for travel time.

### C. Reasonable Hourly Rate

Defendants also dispute the hourly rates charged by Attorneys Ehrens, Sowyrda, and Vasudevan, who were plaintiff's attorneys in this matter. In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The Court's determination of the reasonableness of the requested rates must be "based on evidence other than the attorneys' [own] affidavits." *Deary v. City of Gloucester*, 9 F.3d 191, 198 (1st Cir. 1993).

First, defendants contend that the hourly rate for Attorneys Ehrens and Sowyrda should be reduced from the $225-$240 range to the $165-$175 range. In support of their contention, defendants highlight an affidavit plaintiff's counsel provided stating that that "the range of reasonable attorney fees customarily charged by counsel representing public school districts in eastern Massachusetts ranges from $165 to $245 per hour." (Joyce Aff. ¶ 5). Defendants request that the Court award hourly fees at the low end of that range.

However, as defendants concede, Attorney Ehrens "has forty years of litigation experience and has been actively practicing special education law since 2004." (Opp. at 6). "Attorney Sowyrda has equally impressive credentials with thirty-two years of experience in special education law, and is head of her firm's special education practice." (*Id.*). In addition, the nature of this case and circumstances of the litigation required complex factual analysis and presented questions of law that were far from straightforward. In light of their extensive experience, the difficulty of this case, and the fact that their billing rates were within ranges provided by independent sources, the Court finds that a $230 hourly rate for Attorneys Ehrens and Sowyrda is reasonable. (Joyce Aff. ¶ 5; Sankey Aff. ¶ 6). The Court will also apply Attorney Ehrens's reduced rate of $175 for travel time.

Defendants have a stronger argument as to Attorney Vasudevan's billing rate of $235 per hour. Although Attorney Vasudevan graduated from Harvard Law School and clerked for a Justice on the New Hampshire Supreme Court, she has considerably less litigation experience than Attorneys Ehrens and Sowyrda. It also appears that her involvement in this matter largely concerned the motion for attorneys' fees and costs, which is substantively less complicated than the motion for summary judgment.[11] Plaintiff provided an independent affidavit stating that hourly rates in the range of $225 to $300 per hour are appropriate for an individual of her experience and reputation, (Sankey Aff. ¶ 6). Balancing all these factors, the Court will reduce Attorney Vasudevan's billing rate to $190 per hour.

Defendants further contend that the $110 per hour rate for paralegal work is excessive. (Opp. at 13). The parties have provided no evidence considering the reasonableness of a $110 per hour billing rate for a paralegal in this matter. Courts in this district have varied in determining what constitutes a "reasonable" paralegal rate. *See, e.g.*, *Sinclair v. Berryhill*, 284 F. Supp. 3d 111, 116-17 (D. Mass. 2018) (finding $90 per hour paralegal rate in Social Security matter reasonable); *Anderson v. Brennan*, 267 F. Supp. 3d 270, 274 (D. Mass. 2017) (noting that losing party did not challenge $90 per hour paralegal rate in Title VII matter); *Boadi v. Center for Human Dev., Inc.*, 2017 WL 5178791, at *3 (D. Mass. Nov. 8, 2017) (calculating fees using $150 per hour paralegal rate in FMLA matter); *Aguiar Dias v. De Souza*, 2016 WL 6821067, at *3 (D. Mass. Nov. 17, 2016) (noting that $150 per hour for paralegal work "may be the norm for Boston" but that $90 per hour is more appropriate for "a moderately experienced paralegal in Central Massachusetts."). However, because "[t]he party seeking an award of attorneys' fees

---

[11] Attorney Vasudevan did not enter an appearance until February 13, 2018, approximately three weeks after this Court's order on the parties' cross-motions for summary judgment. (Docket No. 80).

12

bears the burden of establishing . . . the hourly rates charged," the Court will err on the side of caution and reduce the paralegal rate to $90 per hour. *Boadi*, 2017 WL 5178791, at *2.

### D. Calculation of the Lodestar

The Court will decline to adjust the lodestar any further, as some of the factors identified by the First Circuit as warranting an adjustment (for example, the novelty and difficulty of the questions involved, the results obtained, and the experience, reputation, and ability of the attorneys) have already been incorporated into the above analysis. *See Diaz*, 741 F.3d at 177 n.7.

Attorney Sowyrda will be compensated for 6.175 hours at $230 per hour; Attorney Ehrens will be compensated for 789.385 hours at $230 per hour and 14.5 hours of travel at $175 per hour; Attorney Vasudevan will be compensated for 4.14 hours at $190 per hour; and the paralegal will be compensated for 29.925 hours at $90 per hour.[12] Therefore, the approved compensation is $1,420.25 for Attorney Sowyrda, $181,558.55 for Attorney Ehrens, $2,537.50 for Attorney Ehrens's travel, $786.60 for Attorney Vasudevan, and $2,693.25 for the paralegal. The total award of reasonable attorneys' fees is thus $188,996.15.

### E. Costs

Defendants further contend that plaintiff should not be awarded its costs and expenses because plaintiff failed to provide "any documentation whatsoever in support of the request." (Opp. at 12). However, Attorney Vasudevan has since provided an affidavit and accompanying exhibits detailing the basis for plaintiff's cost request. It appears that the requested costs are allocated across six areas: (1) legal research, (2) shipping, (3) courier fees, (4) copying, (5)

---

[12] After accounting for professional service discounts, the Court calculates the following: Attorney Sowyrda billed 6.5 hours, of which none were block billed; Attorney Ehrens billed 850.6 hours, of which 373.7 were block billed and 476.9 were not block billed; Attorney Ehrens also spent 14.5 hours on travel; Attorney Vasudevan billed 4.4 hours, of which 0.8 were block billed and 3.6 were not block billed; and the paralegal billed 31.5 hours, of which none were block billed.

13

travel, meals, and lodging, and (6) court filing fees.

### 1. Legal Research Expenses

Plaintiff's attorneys represent that they incurred $9,706 in research costs in this matter, of which $2,123.78 was billed to plaintiff. (Vasudevan Aff. ¶ 9(a)). Counsel have attached printouts of invoices from Westlaw purporting to explain these charges. (Reply Ex. A). The invoices are hardly a model of clarity, and plaintiff's counsel did not provide an explanation showing how the $9,706 amount was calculated.[13] Equally puzzling is how plaintiff's counsel calculated the $2,123.78 billed to the district.

It appears that plaintiff's counsel may have actually paid to Westlaw only 10% of the stated charges. For example, in May 2016, counsel was billed $198 for research, but paid only $19.07 because of a "special pricing charge." (Reply Ex. A at 7). Similarly, in February 2016, counsel was billed $693 for research, but paid only $69.45. (*Id.* at 4). Because the Court cannot ascertain the basis for this claim, it will be disallowed.

### 2. Shipping Expenses

A UPS invoice shows that on March 30, 2015, plaintiff's counsel mailed two packages containing documents. One was sent to Mr. and Mrs. W., and the other was sent to the BSEA hearing officer. (Reply Ex. B at 5).[14] The total shipping cost was $49.08, which the Court finds to be reasonable.

---

[13] For example, the invoices appear to state that research costs on this matter were: $990 for November 2014; $1,584 for December 2014; $99 for March 2015; $693 for February 2016; $3,069 for April 2016; $198 for May 2016; $158 for June 2016; $99 for November 2016; $297 for January 2017; and $5,363 for the interval between April 1, 2017, and April 17, 2018. The total amount of those invoices is $12,550.

[14] Taking into account the "incentive credits" in the invoice, the shipping cost for the package sent to Mr. and Mrs. W. was $26.35; the shipping cost for the package sent to the BSEA was $22.73.

14

### 3. Courier Expenses

A UPS invoice shows that on May 26, 2017, plaintiff's counsel had documents concerning this litigation delivered from the state Attorney General's office. (Reply Ex. C at 5). The courier cost was $25.31, which the Court finds to be reasonable.

### 4. Copying Expenses

An internal expense report shows that copying expenses for the BSEA hearing and this litigation was $400.20. (Reply Ex. D). Plaintiff's counsel charged $0.20 per page. (Vasudevan Aff. ¶ 9(d)). However, plaintiff has not provided any documentation to support that rate; in light of the lack of the supporting documentation, the Court will reduce the reimbursement sought for photocopies by 25% to $300.15.

### 5. Travel, Meals, and Lodging Expenses

Internal reimbursement forms show that $1,277.67 in expenses were incurred by counsel between September 30, 2014, and October 7, 2017, in connection with the BSEA proceeding and this litigation.[15] The expenses were attributable to travel, parking, tolls, meals, and hotel fees. Although counsel have not provided direct receipts, the entries were made contemporaneously to when the expenses were incurred, and the Court has no reason to doubt their veracity. And, in any event, these requested expenses appear to be reasonable. Accordingly, the Court will award the entirety of that amount.

---

[15] This amount may be broken down as follows: $28.79 for travel and tolls on September 30, 2014; $73.85 for travel, parking, and tolls on April 6, 2015; $180.63 for travel, tolls, meals, and hotel on November 16, 2015; $13.82 for travel and meals on November 17, 2015; $14.75 for travel and meals on November 18, 2015; $11.82 for travel and meals on November 19, 2015; $471.37 in hotel expenses from November 17-19, 2015; $12.00 for travel on April 14, 2016; $1.81 for travel on April 15, 2016; $42.35 for travel, tolls, and meals on January 5, 2016; $18.86 for travel and meals on January 6, 2016; $30.77 for travel, tolls, and meals on January 7, 2016; $272.63 for travel and hotel on January 8, 2016; $19.07 for travel on August 16, 2016; $39.74 for travel and parking on September 28, 2016; and $45.41 for travel and parking on October 7, 2017.

### 6. Court Filing Fee

The filing fee in this action was $400.00, which the Court will award.

In summary, and for the reasons stated above, the Court awards plaintiff $2,052.21 in costs ($49.08 for shipping, $25.31 for courier fees, $300.15 for copying, $1,277.67 for travel, meals, and lodging, and $400 for the filing fee).

## III. Conclusion

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is GRANTED in the amount of $188,996.15 in fees and $2,052.21 in costs, and is otherwise DENIED.

**So Ordered.**

Dated: May 1, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge